UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerry Davis, #270224, | C/A No. 3:12-1364-DCN-JRM |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| P. Drago, | |
| Defendant. | |

## *Background of this Case*

Plaintiff is an inmate at the Evans Correctional Institution of the South Carolina Department of Corrections. Defendant is a doctor at the Evans Correctional Institution. The "STATEMENT OF CLAIM" portion of the Complaint reveals that this civil rights action arises out of Plaintiff's dissatisfaction with the medical care provided to him at the Evans Correctional Institution. He appears to allege that Defendant has not provided adequate treatment for a "knot" in his stomach, a broken left arm, and trouble with his teeth.

Plaintiff's answers on page 2 of the Complaint also show that he filed a grievance on May 18, 2012, which was the day that he signed the Complaint. In his prayer for relief, Plaintiff seeks a prison transfer and medical treatment in a hospital.

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review[1] has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25, 31–35 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324–25 (1989); *Haines v. Kerner*, 404 U.S. 519, 519 (1972)(*per curiam*); *Nasim v. Warden, Maryland House of Corr.*, 64 F.3d 951, 953–56 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70, 71–74 (4th Cir. 1983); *Loe v. Armistead*, 582 F.2d 1291, 1295–96 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 90–95 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)(*per curiam*); *Cruz v. Beto*, 405 U.S. 319, 321–23 (1972)(*per curiam*). When a federal court is evaluating a *pro se* complaint or petition, a plaintiff's or petitioner's allegations are assumed to be true. *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 554 (D.S.C. 2008). Nonetheless, a litigant must plead factual content that allows the court to draw the reasonable inference that the defendant or respondent is plausibly liable, not merely possibly liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even when considered under this less stringent standard, the Complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

---

[1] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court of the United States has held that, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Booth v. Churner*, 531 U.S. 956 (2001) (PLRA requires administrative exhaustion even if grievance procedure does not allow monetary damages and prisoner seeks only monetary damages, so long as grievance tribunal has authority to take some responsive action). Although the lack of exhaustion of administrative remedies is considered an affirmative defense and not a jurisdictional infirmity or a pleading requirement, if the lack of exhaustion is clearly apparent from the face of the prisoner's complaint, *sua sponte* dismissal prior to service of the complaint may be appropriate. *See Jones v. Bock*, 549 U.S. 199, 215–224 (2007) (finding that inmates are not required to specially plead or demonstrate exhaustion in their complaints); and *Anderson v. XYZ Corr. Health Servs. Inc.*, 407 F.3d 674, 683 (4th Cir. 2005) (noting that it is possible that a prisoner's complaint may clearly show that the prisoner has not exhausted his administrative remedies and under those circumstances *sua sponte* dismissal would be appropriate); *cf. Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655–56 (4th Cir. 2006) (*in forma pauperis* proceedings "implicate important judicial and public concerns not present in the circumstances of ordinary civil litigation.").

Here, lack of exhaustion is clearly apparent from the face of the Complaint. Plaintiff states that he has not received a final agency/departmental/institutional answer or determination

concerning the matters alleged. Complaint at 2.[2] This action should be dismissed *without prejudice* to allow Plaintiff the opportunity to file a new suit after exhaustion requirements are met.

The Supreme Court held that the PLRA "seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (proper exhaustion of administrative remedies is necessary). Plaintiff filed his grievance on May 18, 2012, the same day he signed his complaint.[3] *See* Complaint at 2 and 5. A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *See Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d at 677, *see also Neal v. Goord*, 267 F.3d 116, 123 (2nd Cir. 2001) (holding that "allowing

---

[2]In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), **(1)** an inmate must fill out a Form 10-5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; **(2)** the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time the grievance is submitted; **(3)** the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; **(4)** the inmate may then appeal the Warden's response by completing a Form 10-5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; **(5)** the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; **(6)** the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, **(7)** then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA-01.12, at §§ 11; 13.1-13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.* at § 13.6.

[3]Plaintiff did not wait the requisite 125 days (as outlined above) from presenting his Step 1 written grievance to the prison to file a complaint in federal court. *See McKenny v. Reynolds*, No. 4:11-cv-00366-RBH, 2011 WL 1225685, at *2 (D.S.C. Mar. 31, 2011).

prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."), overruled on other grounds by *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal suit); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir.1999) (inmate incarcerated in a state prison must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983); *Perez v. Wisconsin Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

Additionally, Plaintiff's requested relief of a transfer cannot be granted. There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Meachum v. Fano*, 427 U.S.215, 225 (1976) (holding that the Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); *McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise").

## *Recommendation*

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without service of process. Plaintiff's attention is directed to the Notice on the next page.

June 12, 2012  
Columbia, South Carolina

Joseph R. McCrorey  
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

Plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk of Court**
**United States District Court**
**901 Richland Street**
**Columbia, South Carolina 29201**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).